NOT FOR PUBLICATION

FILED

APR 22 2020

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| ANTHONY & SYLVAN POOLS CORPORATION | No.   18-55775 |
| | 18-55867 |
| Plaintiff-counter-defendant-Appellee-Cross-Appellant, | D.C. No. 2:16-cv-06658-R-E |
| v. | MEMORANDUM[*] |
| OUTDOOR SPORTS GEAR, INC. | |
| Defendant-counter-claimant-Appellant-Cross-Appellee. | |

Appeal from the United States District Court
for the Central District of California
Manuel L. Real, District Judge, Presiding

Argued and Submitted December 10, 2019
Pasadena, California

Before:  WARDLAW and LEE, Circuit Judges, and KENNELLY,[**] District Judge.

Anthony & Sylvan Pools Corp. ("A&S") and Outdoor Sports Gear, Inc.

("OSG") cross-appeal the district court's rulings on the parties' breach of contract

---

[*]    This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[**]    The Honorable Matthew F. Kennelly, United States District Judge for the Northern District of Illinois, sitting by designation.

and declaratory judgment claims. As the parties are familiar with the facts, we do not recount them here. We have jurisdiction under 28 U.S.C. § 1291. We review de novo the district court's legal conclusions, including its interpretation of a contract. *United States v. 1.377 Acres of Land*, 352 F.3d 1259, 1264 (9th Cir. 2003). We affirm in part, reverse in part, and remand.

1. The district court concluded, applying California law as dictated in the Asset Purchase Agreement (APA), that OSG breached the APA by failing to indemnify A&S for costs incurred in connection with the *Nash*,[1] *Baeza*,[2] and *Flood*[3] lawsuits. Under Section 2.03(b) of the APA, A&S is responsible for only "liabilities . . . whether . . . absolute or contingent" including "wrongful death, personal injury, physical property damages or any other injury, damage, or harm [that] occur[ed] after the Closing Time." Conversely, OSG is responsible for any such injuries that "occur[red]" prior to closing.

Because the asbestos exposures in *Nash*, *Baeza*, and *Flood* began and ended before the Closing Time as defined in the APA, the district court properly

---

[1] *Nash v. Alpha Beta Co., et al.*, Case No. BC450726 (L.A. Cty. Super. Ct.) ("Nash").

[2] *Baeza v. Amcord Inc., et al.*, Case No. BC537791 (L.A. Cty. Super. Ct.) ("Baeza").

[3] *Flood v. Anthony & Sylvan Corp., et al.*, Index No.: 190077/2017 (N.Y. Sup. Ct.) ("Flood").

concluded that OSG was liable for the damages for personal injuries at issue in those suits.

However, the district court erred by also allocating liability for the remaining claims in those actions to OSG. The APA makes clear that A&S is responsible for "wrongful death . . . [that] occur[ed] after Closing Time." Categorizing the wrongful death claim as a contingent liability renders superfluous the APA's separate, specific reference to such claims. *See Boghos v. Certain Underwriters at Lloyd's of London*, 36 Cal. 4th 495, 503 (2005) (California "disfavor[s] constructions of contractual provisions that would render other provisions surplusage"). Additionally, the relevant injury for the wrongful death claim is "for the loss of companionship and for other losses suffered as a result of [the] decedent's death." *Quiroz v. Seventh Ave. Ctr.*, 140 Cal. App. 4th 1256, 1263 (2006). In the *Flood* matter, the wrongful death occurred after the Closing Time, and accordingly, A&S bears the liability.

A&S is also responsible for the damages arising from the loss of consortium claims in the *Nash* and *Baeza* matters. Loss of consortium is a stand-alone personal injury, separate from the spouse's injury. *See Leonard v. John Crane, Inc.*, 206 Cal. App. 4th 1274, 1279 (2012) ("While the cause of action is triggered by the spouse's injury, 'a loss of consortium claim is separate and distinct.'") (citation omitted). Section 2.03(b)(iii) of the APA allocates to A&S liability for

3

any "personal injury" that occurs after the Closing Time. Here, the loss of consortium (*i.e.*, when the spouse could no longer fulfill spousal functions) occurred after the Closing Time. *See id.* California courts have conceived of the injuries relevant for loss of consortium and wrongful death claims as separate from the underlying injuries since long before the parties entered into the APA. *See, e.g*, *Rodriguez v. Bethlehem Steel Corp.*, 12 Cal. 3d 382, 405–06, (1974); *Fiske v. Wilkie*, 67 Cal. App. 2d 440, 444 (1945).

2. The district court did not clearly err in determining that A&S was not required to maintain asbestos-related coverage under Section 10.07 of the APA. First, the overwhelming weight of the expert testimony at trial showed that asbestos insurance was not available in 1996, and the district court found A&S's expert more credible than OSG's expert. And, although the district court's trial order includes "one sentence" where it misstates the question at trial, "in our judgment[,] the order," taken as a whole, "indicates that the court had [the] correct [question] in mind." *United States v. Duhart*, 496 F.2d 941, 943 (9th Cir. 1974).

3. The district court properly denied declaratory relief to OSG concerning Section 10.07 of the APA. Because A&S was not required to maintain asbestos coverage, OSG cannot show that it either has suffered in the past, or will suffer in the future, the sort of harm that would make the controversy over the meaning of Section 10.07 "sufficient[ly] immedia[te] . . . to warrant the issuance of a

4

declaratory judgment." *Principal Life Ins. Co. v. Robinson*, 394 F.3d 665, 671 (9th Cir. 2005).

4. Finally, the district court did not err in denying A&S's request for attorney's fees incurred in this action under Section 12.01 of the APA. Section 12.01 provides that OSG "shall indemnify and hold harmless" A&S "from and against . . . any and all loss, damage . . . , liability, claims, cost and expense, including reasonable attorney's . . . fees . . . arising out of or in connection with . . . any failure of [OSG] to pay, perform or discharge any of the Excluded Liabilities." "Generally, an indemnification provision [such as this one] allows one party to recover costs incurred defending actions by third parties, not attorney fees incurred in an action between the parties to the contract." *Alki Partners, LP v. DB Fund Servs., LLC*, 4 Cal. App. 5th 574, 600 (2016). Because the indemnification provision in Section 12.01 is the "extent of the contract's provision for attorney fees," A&S "is not entitled to attorney fees incurred in prosecuting this action." *Cont'l Heller Corp. v. Amtech Mech. Servs., Inc.*, 53 Cal. App. 4th 500, 508 (1997).

**AFFIRMED IN PART; REVERSED IN PART; REMANDED.**

5

*Anthony & Sylvan Pools Corp. v. Outdoor Sports Gear, Inc.*, No. 18-55775

WARDLAW, Circuit Judge, concurring in part and dissenting in part:

I respectfully dissent from the majority's allocation of liability to A&S for the wrongful death claim in *Flood* and for the loss of consortium claims in *Nash* and *Baeza*.

Because the contract holds A&S liable only for injuries occurring after Closing Time, when the injuries occurred is the critical determination for assessing liability between A&S and OSG. However, the question of when the injuries at issue in *Nash*, *Baeza*, and *Flood* "occurred" is complicated by the unusual nature of asbestos-related injuries: after inhaling asbestos—either once or on multiple occasions—many decades may pass before any harm becomes manifest. *See Armstrong World Indus., Inc. v. Aetna Cas. & Sur. Co.*, 45 Cal. App. 4th 1, 46–47 (1996) (regarding the latency period when subclinical changes to the lungs resulting from asbestos exposure may occur).

Under California law "as it existed at the time of contracting," *Hess v. Ford Motor Co.*, 27 Cal. 4th 516, 524 (2002), an asbestos-related injury is deemed to have occurred at the time of initial exposure. The year before the parties signed the APA, the California Supreme Court announced that the "continuous injury trigger" rule applies in asbestos-related cases. *See Montrose Chem. Corp. v. Admiral Ins. Co.*, 10 Cal. 4th 645, 685 (1995). This rule recognizes that an

asbestos-related injury is "continuous" from the moment of first exposure, *id.* at 689, and therefore is deemed to "occur[] upon exposure and continue[] until death," *Armstrong*, 45 Cal. App. 4th at 47.

Although the plaintiff in *Flood* did not die until after Closing Time, his wrongful death was contingent upon the underlying asbestos-exposure, which occurred before Closing Time. Thus, OSG should be liable for the wrongful death claim here. Similarly, although the loss of consortium claims at issue in *Nash* and *Baeza*, did not arise until the marital relationship no longer existed, the loss of consortium was also contingent upon an injury that occurred at the moment of exposure to asbestos, i.e. pre-Closing.[4] Therefore, under the terms of the APA, OSG is liable for the claims at issue in *Nash*, *Baeza*, and *Flood*. I would therefore affirm the district court's judgment in full.

---

[4] OSG suggests that *Leonard v. John Crane, Inc.*, 206 Cal. App. 4th 1274 (2012), and *Vanhooser v. Superior Court*, 206 Cal. App. 4th 921 (2012) control this case. Because those decisions issued a decade-and-a-half after the APA was signed, they are irrelevant as to the "mutual intention of the parties as it existed at the time of contracting." *Hess*, 27 Cal. 4th at 524.